UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| TIMOTHY DEAN, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:16-CV-57-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying the application of Plaintiff Timothy Dean ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 18). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

### I. FACTUAL BACKGROUND

At a hearing before an Administrative Law Judge ("ALJ") on March 7, 2013, Plaintiff testified as follows. (Tr. 460-71). Plaintiff was born on August 10, 1956, and has a master of arts degree in English. (Tr. 465). He stopped working in 2004 after his right shoulder was injured at work. (Tr. 465). He developed arthritic pain in his lower neck and upper spine around the same time. (Tr. 466-67). He had surgery in 2006, which did not completely alleviate the pain he had in his shoulder. (Tr. 466). In January 2008, he began to seek medical treatment from Dr. Kurt Zimmer for his back and neck, because the pain was becoming worse. (Tr. 467). It was a burning pain that would intensify and become a stabbing pain, making it difficult to do anything but lie down. (Tr. 467). Dr. Zimmer referred him to a neurologist, who referred him to a pain doctor. (Tr. 467-68). In the beginning of 2008, he began receiving injections for his lower neck and upper spine. (Tr. 468). The injections temporarily alleviated his symptoms for about 24 to 72 hours. (Tr. 469). From 2008 to 2010, his condition remained about the same. (Tr. 469).

At the most recent hearing before an ALJ, on December 11, 2014, Plaintiff testified as follows. (Tr. 480-508). During the November 2006 to April 2010 time frame, he had a driver's license. (Tr. 491). He drove an automatic pickup truck, was able to get in and out himself, could fasten his own seat belt, could pump his own gas, could check his tire pressure and add air if necessary, and could check his oil and add oil if necessary. (Tr. 492-93). He was able to make food for himself. (Tr. 494). He could cast his fishing rod, reel in average sized bass and crappie, fillet the fish, and cook the fish. (Tr. 494-96). He used a hand-held leaf blower, but he worked in increments of about 30 minutes because he would be in pain. (Tr. 498). He used a riding lawn mower, which he steered with his left hand. (Tr. 499-500). He could go to the post office and bank on days when he felt up to it. (Tr. 499). Around April 2007, he probably had half of his normal

range of motion and lifting ability, and his range of motion and lifting ability diminished after that due to his arthritis. (Tr. 501). With his arthritic pain, he had good days and bad days. (Tr. 502). He also testified that cold and damp conditions made his arthritis flare up. (Tr. 502-03). He testified that he kept a cane in his car trunk in case he needed help walking. (Tr. 503). Plaintiff testified that during the relevant time period, he got injections in his neck, shoulder, and middle back, and once in a while in his lower back. (Tr. 507). Plaintiff testified that although he gets seizures, he takes Gabapentin to control them, and that if he takes the medicine as prescribed, he is "cured of that basically." (Tr. 508).

Plaintiff's medical records show that during the relevant 2006 through 2010 time frame, Plaintiff sought regular treatment for neck, shoulder, and back pain (Tr. 311-13, 342-43, 397-98, 399-409, 410-17, 420-24, 430-34, 822-24, 835-43); had X-rays showing disc degeneration in the cervical spine (Tr. 403); had an MRI showing mild disc bulges in the cervical spine (Tr. 396); had lumbar spine imaging showing spondylosis, moderate degenerative disc space narrowing, and mild disc space narrowing (Tr. 395); received diagnoses including shoulder joint pain, cervical spondylosis, cervical disc degeneration, cervicalgia, arthralgias in multiple sites, lumbar spondylosis, lumbago, enthesopathy, and obesity (Tr. 343, 399, 403, 405, 407, 409, 411, 413, 430, 431, 432, 433, 790-91, 822, 824); was prescribed medications including naproxen, Gabapentin, hydrochlorothiazide-lisinopril, Skelaxin, and a Lidoderm patch (Tr. 399, 403, 407, 410, 413, 420, 431, 434, 494, 791, 822, 823, 835-36, 839, 840, 843); and received regular injections for pain control in his neck (Tr. 411, 412, 413, 414, 417, 430, 431, 432, 434, 822, 823, 824).

The record includes opinion evidence from several sources. On October 11, 2006, consultative examiner Shawn L. Berkin, D.O., opined that Plaintiff had a permanent partial disability of 35% in the right upper extremity at the level of the shoulder; that Plaintiff should

3

have a 65-pound lifting restriction from the floor to the waist as a single event; that Plaintiff should have a 50-pound lifting restriction from the waist to the shoulder; that Plaintiff should avoid lifting with his right arm extended from his body; that Plaintiff should avoid excessive lifting or working with his right arm above the level of the shoulder; and that if Plaintiff was required to perform exertional activities for an extended period, he should be permitted frequent breaks. (Tr. 306-07).

On February 23, 2007, Dr. Paulo S. Bicalho, M.D., who had been treating Plaintiff for at least several months, noted that Plaintiff had 5/5 strength in his shoulder and had a full range of motion; stated that he could continue full duty work; and stated, "I do not think he will have any disability from this injury." (Tr. 311-13).

On or around January 30, 2008—when he had just begun treating Plaintiff—Dr. Kurt Zimmer completed a Medical Report from the Missouri Department of Social Services Family Support Division. (Tr. 869-70). He noted that Plaintiff had right shoulder pain. (Tr. 869). He opined that Plaintiff had a disability that prevents him from engaging in that employment or gainful activity for which his/her age, training, experience or education will fit him and that the disability would be permanent. (Tr. 870).

On March 20, 2008, Plaintiff was examined by Patrick J. LeCorps, M.D. (Tr. 391). Dr. LeCorps noted that Plaintiff had limitation of motion, mainly abduction and external rotation, and that his passive range of motion was full. (Tr. 391). Dr. LeCorps opined that Plaintiff had a disability that prevented him from engaging in that employment or gainful activity for which his age, training, experience or education would fit him, and that the expected duration of the disability was two months. (Tr. 393).

On November 4, 2010 (several months after the relevant time period had ended), Dr. Zimmer wrote a letter stating that Plaintiff's primary disabling conditions were intervertebral disc

degeneration and spondylosis of the lumbar spine, as well as spondylosis of the cervical spine. He stated that Plaintiff required frequent changes of position and must periodically rest during the day, and periodically has pain that require him to stay on the couch. He stated that Plaintiff's low back was stiff and sore and that he had some difficulty bending and stooping. He stated that lifting and carrying objects weighing more than 20 pounds more than occasionally would be ill-advised. Dr. Zimmer stated that Plaintiff's neck was stiff and sore, with a reduced range of motion, and that he had to turn his head in a careful and controlled fashion to avoid significant pain. He stated that those conditions were not amenable to employment. (Tr. 873). Dr. Zimmer also completed a physical residual functional capacity assessment form for Plaintiff in which he opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for a total of at least 2 hours in an 8-hour workday; could sit for less than about 6 hours in an 8-hour workday; could do unlimited pushing and pulling; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, and crouch; could never climb a ladder, rope, or scaffold; and could never crawl. (Tr. 861-62). He found that Plaintiff had no limitations in reaching in all directions (including overhead), handling (gross manipulation), fingering (fine manipulation), and feeling (skin receptors). (Tr. 863). He found Plaintiff had visual limitations with regard to near acuity and accommodation. (Tr. 863). He found Plaintiff should avoid all exposure to extreme cold, wetness, and hazards, noting that he was a "fall hazard" and that "cold weather effects pain." (Tr. 864). He provided no other explanations for his opinions.

On February 28, 2013, Dr. Zimmer wrote a letter stating that Plaintiff was, "to a reasonable degree of medical certainty, permanently and totally disabled as of January 14, 2008." (Tr. 872).

## II. PROCEDURAL BACKGROUND

On January 11, 2008, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since March 17, 2004. (Tr. 90-96, 97-99). His application was initially denied. (Tr. 46-57). On October 1, 2009, after a hearing, an ALJ issued a decision finding Plaintiff was disabled from March 17, 2004 through October 31, 2006, but was not disabled after that date. (Tr. 532-44). The Appeals Council denied Plaintiff's request for review. (Tr. 545-48). Plaintiff sought judicial review, and on January 4, 2012, the United States District Court remanded the case to the Commissioner. (Tr. 550). In the interim, on April 30, 2010, Plaintiff filed a second application for SSI benefits, and he was found disabled as of that date. (Tr. 579). On May 8, 2013, after a second hearing, an ALJ issued a decision noting that Plaintiff had been found disabled from March 17, 2004 through October 31, 2006, but finding that Plaintiff was not disabled from November 1, 2006 through April 29, 2010. (Tr. 560-70). On June 5, 2013, Plaintiff filed written exceptions to that decision, and the Appeals Council remanded the case to the ALJ. (Tr. 579-81). On January 14, 2015, after a third hearing, an ALJ issued a decision finding Plaintiff was not disabled from November 1, 2006, through April 29, 2010. (Tr. 442-50). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since March 17, 2004, the alleged onset date. He found that during the relevant time period (November 1, 2006 through April 29, 2010), Plaintiff had the severe impairments of degenerative joint disease of the nondominant right shoulder status post rotator cuff repair with distal clavicle resection and recurrent impingement tendonitis; degenerative

disc and joint disease of the cervical and lumbar spines; hypertension; venous insufficiency; petit-mal seizures; and obesity. (Tr. 444-45). He found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 445). The ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.976(b) except that he could not climb ladders, ropes, or scaffolds; could only occasionally stoop, kneel, crouch, or climb ramps and stairs; could never crawl; could not reach overhead with the right nondominant right upper extremity; could only occasionally reach overhead with the dominant left upper extremity; could not tolerate exposure to extreme heat, extreme cold, or extreme humidity; could not operate motor vehicles; could not work out of sight of others, around dangerous unprotected heights or dangerous unprotected machinery; could not work around open bodies of water or large open vessels or vats; and could not work in confined spaces. (Tr. 445). The ALJ found that Plaintiff could not perform his past relevant work. (Tr. 449). However, relying on the testimony of a vocational expert, he found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including jobs such as file clerk, general clerk, and bench assembler. (Tr. 450).

V. **DISCUSSION**

Giving Plaintiff's *pro se* brief a broad reading, Plaintiff challenges the ALJ's decision on three grounds: (1) that the ALJ failed to give adequate weight to the opinion of Plaintiff's treating physician, Dr. Kurt Zimmer, that Plaintiff was fully disabled as of January 14, 2008;[2] (2) that the

---

[2] In his brief, Plaintiff states that he "has only requested his back disability to be paid commencing on 1-14-08 to present." Pl.'s Br., at 1. However, as the Commissioner points out, it does not appear that Plaintiff ever formally requested to amend his alleged onset date while his claim was before the Commissioner. In addition, at his most recent hearing before an ALJ, Plaintiff did not dispute the ALJ's description of the relevant time from being November 1, 2006 through April 29, 2010.

9

ALJ improperly gave weight to the opinion of the single decisionmaker, Aaron Sprat; and (3) that the ALJ failed to give adequate weight to a certification of disability from the Missouri Department of Social Services.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

---

(Tr. 484-86). Therefore, the Court will consider the entire relevant disability period as described by the ALJ.

## B. The ALJ's Assessment of Dr. Zimmer's Opinions

Plaintiff's first argument is that the ALJ did not give adequate weight to the opinion of his treating physician, Dr. Kurt Zimmer, that he was disabled as of January 14, 2008. The ALJ considered and discussed Dr. Zimmer's opinion that Plaintiff was disabled, but gave it "no weight," finding that it was not medically supported by the record as a whole and was not consistent with Dr. Zimmer's examination findings or treatment notes. (Tr. 447). The ALJ did give weight to some of the specific functional limitations in Dr. Zimmer's opinions. (Tr. 447).

"A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). "A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006)). The ALJ may discount a treating physician's opinion if it is inconsistent with the physician's treatment notes or with the record as a whole. *Halverson v. Astrue*, 600 F.3d 922, 929–30 (8th Cir. 2010). It is the ALJ's duty to resolve conflicts in the evidence, and the ALJ's assessment of the opinion evidence should not be disturbed so long as it falls within the "available zone of choice." *See Hacker*, 459 F.3d at 937–38.

As a preliminary matter, the Court notes that a treating physician's opinion that an individual is "disabled" is not the type of opinion that the ALJ gives controlling weight. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) ("A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling

weight."). *See also Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (holding that the ALJ was justified in not giving controlling weight to a doctor's opinion about an applicant's ability to work full time, because the opinion was conclusory and "strayed beyond medical issues to a legal opinion on the application of the social security statute"); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) ("[S]tatements that a claimant could not be gainfully employed are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner.") (quotation marks omitted).

The Court also notes that although the ALJ did not give weight to the ALJ's conclusory statement that Plaintiff was "disabled," the ALJ did include in the RFC several of the specific functional limitations in Dr. Zimmer's opinion. For example, as the ALJ noted, Dr. Zimmer opined in November 2010 that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (Tr. 447, 861, 873). That finding was consistent with the ALJ's limitation of Plaintiff to light work, which requires lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. *See* 20 C.F.R. § 404.1567(b), 416.967(b). The ALJ also included in the RFC specific limitations reflecting Dr. Zimmer's opinions that Plaintiff could never climb ladders, ropes, or scaffolds; could never crawl; could not tolerate extreme cold because it increases his pain; and could not be around hazards because he was at risk of falling. (Tr. 445, 862-64).

The ALJ's decision not to give weight to Dr. Zimmer's other opinions—that Plaintiff was permanently disabled, was limited to less than six hours of sitting and two hours of standing and/or walking per day, and required frequent changes of position and rest periods during the day—was supported by good reasons and substantial evidence. As the ALJ noted, treatment notes from Dr. Zimmer and other medical providers do not support his opinions. Although Plaintiff sought

frequent treatment for neck pain, he only rarely complained of back pain or other problems that would affect his ability to sit or stand, and he did not complain of problems with standing, sitting, or walking. (Tr. 399-403, 406-07, 420-21, 424, 835, 838-39, 840, 842, 843). In addition, when Plaintiff did complain of back pain to Dr. Zimmer in July 2008, Plaintiff had no tenderness on palpation, no muscle spasm, and no costovertebral angle tenderness. (Tr. 405). In March 2009, Plaintiff reported that he had chronic low back pain but that it was "doing okay." (Tr. 410). In addition, as the ALJ noted, Plaintiff reported significant improvement in his neck pain with medications and trigger point injections. (Tr. 400, 430-34, 448, 822-24, 835, 838, 842, 843). Based on this evidence, the ALJ reasonably and permissibly found that Dr. Zimmer's treatment notes did not fully support the limitations on standing, sitting, and walking in his opinion. (Tr. 447). *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes."); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone," "were never mentioned in [the physician's] numerous records of treatment," and were not "supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted").

In addition, the ALJ reasonably found that Dr. Zimmer's opinions were not supported by the objective medical evidence. (Tr. 447). Lumbar spine imaging in July 2008 showed only some mild and some moderate disc space narrowing. (Tr. 395). An MRI of the cervical spine in September 2008 showed only mild disc bulges. (Tr. 396, 398). When Plaintiff was examined by a neurosurgeon in October 2008, he had 5/5 motor strength throughout, normal gait and station, normal tone with no atrophy, and intact sensation and reflexes. (Tr. 398, 447).

13

Moreover, as the ALJ noted, Dr. Zimmer's opinion was inconsistent with other medical opinion evidence in the record. For example, as the ALJ noted, in October 2006, Paulo S. Bicalho, M.D., another of Plaintiff's treating physicians, found that Plaintiff had a full range of motion and 5/5 strength in his shoulder, opined that he could continue with full duty, work and stated, "I do not think he will have any disability from this injury." (Tr. 312, 446). On February 23, 2007, Dr. Bicalho again noted that Plaintiff had 5/5 strength in his shoulder and a full range of motion, could return to full duty work, and would not have a disability from his injury. (Tr. 311, 446). The ALJ also gave partial weight to the opinion of consultative examiner Shawn L. Berkin, D.O., that Plaintiff could lift between 50 and 65 pounds but should avoid lifting with his right arm above the level of the shoulder. (Tr. 306-07, 448). "'[I]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

For all of the above reasons, the Court finds that the ALJ reasonably weighed and resolved the different medical opinions and other evidence in the record in making his determination. His decision to discount Dr. Zimmer's opinions fell within the available "zone of choice," and the Court will defer to that decision. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### C. The ALJ Did Not Improperly Give Weight to the Opinion of the Single Decisionmaker

Plaintiff's second argument is that the ALJ improperly gave weight to the opinion of Aaron Spratt, a "single decisionmaker"[3] who was not a physician. (Tr. 38-44). It is legal error for an ALJ

---

[3] "Single decision-makers are disability examiners authorized to adjudicate cases without mandatory concurrence by a physician." *Shackleford v. Astrue*, No. 4:10CV2175 AGF, 2012 WL 918864, *3 n.5 (E.D. Mo. March 19, 2012) (citing Social Security Advisory Board, Disability Decision Making: Data and Materials, May 2006, pp. 4, 104 n. 7. at http://www.ssab.gov/documents/chartbook.pdf). *See also* 20 C.F.R. §§ 404.906, 416.1406 (defining the role of the single decisionmaker in the disability determination process).

to weigh the opinion of a single decisionmaker as if it were an opinion from a medical consultant. *See Dewey v. Astrue*, 509 F.3d 447, 440-49 (8th Cir. 2007) (finding legal error and remanding where the ALJ weighed the opinion of a person who lacked medical credentials as if it was an opinion from a medical consultant); *Artrip v. Berryhill*, No. 4:15-CV-01759-NCC, at *10-*11(E.D. Mo. Feb. 14, 2017) (remanding where the ALJ may have relied on the conclusions of a single decisionmaker in formulating the RFC).

Here, however, the ALJ's decision makes it clear that the ALJ did not rely on, or give weight to, the opinion of the single decisionmaker. In February 2014, this case was remanded to the ALJ by the Appeals Council because *another* ALJ had improperly considered the opinion of the single decisionmaker in making his decision. (Tr. 579-80). The Appeals Council instructed the ALJ on remand to "not consider or give weight to the SDM assessment at Exhibit 2A in determining whether the claimant is disabled prior to April 30, 2010." (Tr. 580). On remand, in the decision currently under review, the ALJ stated:

> [T]he undersigned states that no consideration has been given to the SDM assessment at Exhibit 2A in determining the residual functional capacity herein. The residual functional capacity assessment is made based on a synthesis of all the objective abnormal medical findings evidenced in the record, a light type residual functional capacity determined giving the claimant every benefit of the doubt.

(Tr. 446). In light of the ALJ's unequivocal statement that he did not consider the opinion of the single decisionmaker, as well as the fact that the ALJ's decision shows that he relied on the opinions of medical sources and on other evidence in the record to formulate Plaintiff's RFC, Plaintiff's argument that the ALJ improperly relied on the opinion of the single decisionmaker is without merit.

### D. The ALJ Did Not Err by Failing to Give Weight to the State's Disability Determination

Plaintiff's final argument appears to be that the Commissioner's decision should be reversed because Plaintiff has been found disabled by the State of Missouri. On May 20, 2008, the Missouri State Family Support Division found that Plaintiff was permanently and totally disabled, as that term was defined by the Missouri Family Support Division, as of January 14, 2008. (Tr. 160-63).

Because a disability determination by another government agency is based on the government agency's own rules and not on social security law, it is not binding on the Commissioner. *See* 20 C.F.R. §§ 404.1504, 416.904. *See also Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) ("While the ALJ should consider the disability findings of other agencies, [a Veterans Affairs] disability rating is not binding on the commissioner.") (citing *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006) & 20 C.F.R. § 404.1504). *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) ("[W]hether or not [the plaintiff] was disabled under Iowa law is not binding on the Commissioner of Social Security.") (citing 20 C.F.R. § 404.1504).

Here, the ALJ discussed and considered the Missouri state determination that Plaintiff was disabled beginning January 14, 2008, but found it inconsistent with other evidence in the record. (Tr. 448). For example, the ALJ noted that in Plaintiff's Function Report, dated January 29, 2008, Plaintiff reported that he was able to do laundry, change the sheets on his bed, vacuum and sweep, perform car maintenance, mow the lawn, use a leaf blower, shop, and prepare meals. (Tr. 142, 448). The ALJ also noted that at that time, Plaintiff reported taking only 200 mg of ibuprofen three times per day. (Tr. 140, 448). The ALJ reasonably discounted the Missouri state disability determination in light of the record as a whole, including Plaintiff's own reports of what he could do. Thus, this argument is without merit.

### E. The ALJ's RFC Determination and Step Five Determination Were Supported by Substantial Evidence

In addition to addressing the specific arguments addressed in Plaintiff's *pro se* brief, the Court has also considered the question of whether the ALJ's RFC assessment and Step Five determination were supported by substantial evidence.

After reviewing the record as a whole, the Court finds that the ALJ's determination that between November 1, 2006 and April 29, 2010, Plaintiff had the RFC to perform light work, with several additional limitations, is supported by substantial evidence. This evidence includes the February 2007 opinion of treating physician Dr. Paulo Bicalho that Plaintiff had full strength and range of motion and could continue full duty work; the October 2006 opinion of Dr. Berkin that Plaintiff could lift up to 50 to 65 pounds with some limitations on the use of his right arm; the findings in the record showing that Plaintiff had full or nearly full range of motion and strength; the treatment records showing that Plaintiff responded to medications and injections and complained only infrequently of lower back pain; the mild to moderate X-ray and MRI findings in the record; and Plaintiff's own accounts of his ability to engage in activities such as fishing, car maintenance, and yard work.

The Court also finds that the ALJ's determination at Step Five that there were other jobs that existed in the national economy that Plaintiff could perform was supported by substantial evidence. At Step Five, the Commissioner bears the burden of proving that work exists in the national economy that the claimant can perform. *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005); 20 C.F.R. §§ 404.1560(c), 416.960(c). In finding that this burden had been met, the ALJ relied on the testimony of a vocational expert. (Tr. 449-50). At the hearing, the ALJ described to the vocational expert a hypothetical individual who had all the limitations in Plaintiff's RFC. (Tr. 513-15.) The vocational expert testified that a person of Plaintiff's age and education level with

those limitations could perform representative jobs such as file clerk (Dictionary of Occupational Titles No. 206.387-034, 500 jobs locally and 133,000 jobs nationally), general clerk (No. 209.562-010, 2,300 jobs locally and 120,000 jobs nationally); and bench assembly (No. 706.684-022, 1,600 jobs locally and 118,000 jobs nationally). (Tr. 516-17). Testimony from a vocational expert based on a properly-phrased hypothetical that includes all of Plaintiff's limitations constitutes substantial evidence at Step Five. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996). Thus, the Court finds that the Step Five determination was supported by substantial evidence.

## VI. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of May, 2017.